*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

RICHARD AVON SANDERS, JR.,

       Defendant-Appellant.

UNPUBLISHED
May 2, 2024

No. 351177
Wayne Circuit Court
LC No. 18-002440-01-FC

ON REMAND

Before: O'BRIEN, P.J., GADOLA, C.J. and SERVITTO, J.

PER CURIAM.

This case returns to this Court following remand from our Supreme Court. Following a jury trial, defendant was acquitted of first-degree murder but convicted of the lesser included offense of second-degree murder. The trial court sentenced defendant to 50 to 76 years' imprisonment for that conviction. When this case first came before this Court, defendant challenged (1) the trial court's denial of his motion for a mistrial, (2) the sufficiency of the evidence supporting his conviction, and (3) his within-guidelines sentence on grounds that it was disproportionate and unconstitutional. This Court rejected all three claims of error. Defendant appealed that decision to our Supreme Court. While his appeal was pending, our Supreme Court decided *People v Posey*, 512 Mich 317; 1 NW3d 101 (2023), in which a majority of the justices agreed that a defendant could challenge a within-guidelines sentence on grounds that it was disproportionate. Following the issuance of *Posey*, our Supreme Court, in lieu of granting leave to appeal, vacated this Court's previous opinion "to the extent that it is inconsistent with . . . *Posey*" and remanded the case "for reconsideration in light of *Posey*." *People v Sanders*, ___ Mich ___; 964 NW2d 43, 43 (2021). In all other respects, the Court denied leave to appeal. *Id*. We again affirm.

In its previous opinion, this Court recounted the relevant facts as follows:

       Macita Mahone's body was discovered around 6:45 a.m. on February 17, 2018. Her body had been dragged from the side of the road and left between two

houses near the intersection of Evanston and Annsbury in Detroit. Mahone died from a gunshot wound to the head fired behind her left ear at point blank range; the bullet travelled forward and up, exiting near her right scalp. Someone had tried to burn Mahone's dead body using gasoline; approximately 50% of her body was covered in burns.

Sanders admittedly spent the evening with Mahone and another woman at a motel in the city of Detroit. He and Mahone left alone and travelled to a gas station where Mahone caused a scene. Sanders then drove Mahone to the intersection of Evanston and Annsbury. Sanders claimed that every step of this trip was dictated by Mahone after receiving phone calls. The police created a compilation of footage from various surveillance cameras showing Sanders's route. The moment of Mahone's death was not captured on camera. Rather, a security camera on a private residence captured an image of Sanders's headlights as his vehicle pulled up and parked about a block away. Within seconds of the vehicle parking, a popping noise is heard. The vehicle remained parked for approximately five minutes and then pulled away, turning a corner far from the camera.

On February 24, 2018, Sanders brought his vehicle to a body shop for the replacement of his passenger side front window. The repair man found a handgun on the floor by the front passenger seat while he was vacuuming up broken glass. Sanders claimed that the gun did not belong to him and he had never seen it before. He also claimed that his window was broken only that day, by a former girlfriend who confronted him in a gas station parking lot.

On February 28, Sanders was pulled over for a traffic violation and could not produce his driver's license. The officer observed a handgun (the same gun found by the repair man) lodged between the driver's seat and center console. The officer arrested Sanders. During the subsequent search of Sanders's vehicle, blood was found between the bottom and back cushion of the front passenger seat and between the seat and the console. Testing matched this blood to Mahone.

Sanders initially denied that he shot Mahone. He claimed that Mahone left his vehicle and he did not know [what] happened to her thereafter. As time wore on, however, Sanders accused Christopher Hightower of shooting Mahone. Sanders claimed Mahone had opened the passenger side door and turned her body to exit the vehicle when Hightower approached. Hightower pushed Mahone back into the vehicle and shot her in the head. Sanders described that he jumped out of the vehicle and ran between two houses across the street. When he returned five minutes later, Mahone's body and Hightower were gone. Sanders claimed that he recognized Hightower at the time of the shooting by face, but not by name. Sanders was afraid to accuse Hightower because he lived near his ex-wife and child. Sanders later noted Hightower in the background of a news report during which his acquaintance Tanae Ellison was being interviewed. Sanders learned Hightower's name through Ellison. Sanders claims that a cigarette butt found near Mahone's body belonged to Hightower. But the prosecution's expert witness did not definitively link the evidence to Hightower; she merely stated that the DNA

evidence bore 8.8% more similarity to Hightower than Sanders. [*People v Sanders*, unpublished opinion of the Court of Appeals, issued March 18, 2021 (Docket No. 351177), p 2.]

Defendant's minimum guidelines range was 22½ to 56¼ years' imprisonment, and the trial court sentenced defendant on the high-end of his minimum sentencing range—50 to 76 years' imprisonment.

On appeal, defendant challenged the proportionality of this sentence, and this Court affirmed. This Court explained its reasoning as follows:

A within-guidelines sentence based on accurately scored guidelines is deemed proportionate and must be affirmed. *People v Jackson*, 320 Mich App 514, 527; 907 NW2d 865 (2017), rev'd in part on other grounds 504 Mich 929 (2019). This basic rule stemming from MCL 769.34(10) was not altered by *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). *Lockridge* held that the minimum guidelines ranges in the legislative sentencing guidelines are advisory, rather than mandatory. *Id.* at 392. Sentences imposed post-*Lockridge* that deviate from the sentencing guidelines are evaluated for reasonableness under the principle of proportionality first articulated in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *People v Steanhouse*, 500 Mich 453, 472; 902 NW2d 327 (2017). However, within-guidelines sentences are still considered "presumptively proportionate." *People v Odom*, 327 Mich App 297, 315; 933 NW2d 719 (2019). And post-*Lockridge*, we still must affirm a within-guidelines sentence when there is no allegation of scoring errors or that the court relied on inaccurate information. *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016), citing MCL 769.34(10). As this Court has held, "*Lockridge* did not alter or diminish MCL 769.34(10)." *Schrauben*, 314 Mich App at 196 n 1. [*Sanders*, unpub op at 5.]

As alluded to earlier, this portion of this Court's previous opinion was vacated in light of *Posey*, and we are now tasked with reviewing the proportionality of defendant's sentence.

In *People v Posey*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 345491), slip op at 2 (*Posey II*), issued after the Supreme Court remanded that case, this Court explained the Supreme Court's holding in *Posey* as follows:

Supreme Court Justices BOLDEN, BERNSTEIN, CAVANAGH, and WELCH agreed that the opening sentence of MCL 769.34(10) is unconstitutional, although Justice WELCH offered a different constitutional analysis. Furthermore, the latter three Justices agreed with Justice BOLDEN's pronouncements in her lead opinion that "within-guidelines sentences are to be reviewed for reasonableness," that reasonableness review requires a determination whether a sentence was proportionate, that there is a nonbinding presumption of proportionality, meaning that a within-guidelines sentence is not binding on the Court of Appeals, that "the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate," and that "a within-guidelines sentence may indeed be disproportionate or unreasonable." [Citations and footnote omitted.]

The *Posey II* Court set forth the basic caselaw governing the reasonableness and proportionality inquiry as follows:

> In *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), the Michigan Supreme Court observed:
>
> > [T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender."
>
> > "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). With respect to sentencing and the guidelines, the key test is not whether a sentence departs from or adheres to the guidelines range. *Steanhouse*, 500 Mich at 472. The key test is whether the sentence is proportionate to the seriousness of the matter. *Id*. In regard to proportionality, the *Milbourn* Court "observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system." *Milbourn*, 435 Mich at 668. "The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). [*Posey II*, ___ Mich App at ___; slip op at 2-3.]

The question now before us is whether the trial court abused its discretion when it sentenced defendant to 50 to 76 years' imprisonment for second-degree murder in light of *Posey*.

As explained above, there is a nonbinding presumption that a within-guidelines sentence is reasonable, and defendant bears the burden of demonstrating that his within-guidelines sentence is unreasonable or disproportionate. Defendant requested and was granted leave to file a supplemental brief to sustain his burden.[1] In that brief, defendant contends, in various formulations, that there was "no justification" for the trial court's sentence, which rendered the sentence "disproportionate and unreasonable." We disagree.

Defendant does not take issue with the trial court's scoring of any prior record variable (PRV) or offense variable (OV). Those variables took into account the background of the offense

---

[1] *People v Sanders*, unpublished order of the Court of Appeals, issued March 25, 2024 (Docket No. 351177).

and the nature of the offense, consistent with the principle of proportionality. See *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017).

The trial court scored PRV 1 at 25 points, reflecting that defendant had one "prior high severity felony conviction," MCL 777.51—an armed-robbery conviction. PRV 2 was scored at 5 points because defendant had one "low level severity felony conviction," MCL 777.52—a prior felony-firearm conviction. The trial court scored PRV 5 at 2 points because defendant had one prior misdemeanor conviction, MCL 777.55, and PRV 7 was scored at 10 points,[2] reflecting that defendant had one subsequent or concurrent conviction, MCL 777.57—defendant was convicted of felony-firearm and felon-in-possession following a previous trial connected to the same events that gave rise to his conviction in this case.[3]

Turning to the scoring of defendant's OVs, the trial court scored OV 1 at 25 points, which is proper when "[a] firearm was discharged at or toward a human being or a victim was cut or stabbed with a knife or other cutting or stabbing weapon." MCL 777.31(1)(a). OV 2 takes into account the lethal potential of the weapon used, and it was scored at 5 points here because defendant used a pistol. MCL 777.32(1)(d). OV 3 reflects the physical injury to a victim and was scored at 50 points because the victim was killed as a result of a homicide offense. MCL 777.33(1)(b) and (2)(b). OV 5—psychological injury to a member of the victim's family—was scored at 15 points, reflecting "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). OV 6 looks at the offender's intent to kill or injure another individual; it was scored at 25 points because defendant intended to kill the victim, but the killing was not premeditated as reflected by the jury's verdict. MCL 777.36(1)(b). Finally, OV 19, which accounts for interference with the administration of justice, was scored at 10 points because defendant attempted to interfere with the administration of justice by admittedly lying to the court. MCL 777.49(c).[4]

Defendant was convicted of second-degree murder, which is a Class M2 offense. MCL 777.16p. Defendant's PRV score totaled 42 points, and his OV score totaled 105 points, which placed defendant in cell D-III, with a corresponding minimum sentence range between 270 to 450 months (or life). MCL 777.61. But defendant was also a third-offense habitual offender, which increased his maximum minimum sentencing range by 50%. MCL 777.21(3)(c). This resulted in defendant's ultimate minimum sentencing range of 270 to 675 months, or 22½ to 56¼ years.

Defendant's minimum sentence of 50 years fell within this minimum sentencing range. Of course, the key test is not whether defendant's sentence was within the guidelines range but whether his sentence was proportionate to his background and the circumstances of his offense.

---

[2] The sentencing information report (SIR) submitted to this Court does not accurately reflect the scoring of PRV 6 and PRV 7. At defendant's sentencing hearing, the trial court agreed that PRV 6 was properly scored at 0 points and that PRV 7 was properly scored at 10 points.

[3] That trial resulted in a hung jury with respect to charges of murder and mutilation of a dead body, so a mistrial was declared as to those offenses, and they were retried in the instant case.

[4] The SIR submitted to this Court does not accurately reflect the trial court's scoring of OV 5, OV 6, and OV 19, which the trial court corrected on the record at defendant's sentencing hearing.

See *Steanhouse*, 500 Mich at 472. That said, defendant's within-guidelines sentence is considered presumptively proportionate. *Posey*, ___ Mich App at ___; slip op at 2. The guidelines, after all, embody the principle of proportionality by considering the background of the offender and the circumstances of the offense. See *Dixon-Bey*, 321 Mich App at 524.

As detailed above, defendant's within-guidelines sentence reflects defendant's background: he was previously convicted of two felonies—one a high-severity felony and one a low-severity felony; he was previously convicted of a misdemeanor; and he was convicted of a subsequent or concurrent felony in addition to his conviction of second-degree murder. Defendant's within-guidelines sentence also reflects the circumstances of the murder that defendant stood convicted of—his discharge of a firearm towards another person; the lethality of the weapon that defendant used to commit the offense; the physical injury that defendant caused, which was the most grievous physical injury he could inflict on another; the psychological harm that defendant's crime wrought on the victim's family; defendant's intent to kill the victim; and defendant's conduct of interfering with the administration of justice by lying to the court. Both defendant's background and the circumstances of the instant offense, considered together, justified a lengthy sentence, as encapsulated by the guidelines. This belies defendant's assertion that there was "no justification" for the trial court's imposition of a 50-to-76-year sentence—it was justified by defendant's recidivism and the circumstances surrounding his killing of Mahone. While defendant's sentence was on the high-end of his minimum guidelines range, the abuse-of-discretion standard recognizes that there will be a range of reasonable and principled outcomes. *Babcock*, 469 Mich at 269. Defendant bore the burden of establishing that his sentence fell outside that range, and he failed to carry that burden.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ Deborah A. Servitto